Caldwell *v.* Huffstutter *et al.*

(*Jackson,* April Term, 1938.)

Opinion filed May 28, 1938.

Joseph L. Fry, of Union City, for appellant, Huffstutter.

David G. Caldwell, of Union City, for appellee, Caldwell.

Mr. Justice Chambliss delivered the opinion of the Court.

This is a bill, filed July 20, 1935, to impeach for fraud a decree entered in March, 1932, authorizing allowances to J. W. Huffstutter, as guardian of Grady Huffstutter, out of this minor's funds, for board, clothes, medicine and school books furnished the minor by the guardian over a period of five and one-half years. Grady Huffstutter was about eighteen years of age when the former proceedings were had. Following the death of his father, in 1926, he had lived for about six years with J. W. Huffstutter, who was his uncle and Administrator of his father's estate, which consisted of the proceeds of a United States Government Adjusted Service Certificate in the sum of $844. Huffstutter was later appointed guardian of Grady, receipting as guardian for $677, and the former suit was brought by him in this capacity.

The Chancellor held that the charges of fraud were not sustained and dismissed the bill. The Court of Appeals concurs with the Chancellor on this question and there is no challenge of this finding. Therefore, discussion of this issue, the sole ground relied on for relief by the bill, becomes unnecessary.

However, after concurring with the Chancellor, as indicated, the Court of Appeals suggested and adopted the theory that the bill in this cause might and should be treated as "a bill of review for an error apparent on the face of the record in the original cause," and holding

that such error appeared, looking, as the rule permits, to the bill and the decree, reversed the Chancellor, sustained the present bill and reversed the former decree and dismissed that suit. The petition to this Court challenges this action of the Court of Appeals, first, because no such wholly inconsistent relief was sought by the bill in this cause, and second, because the former decree is not properly subject to attack for error apparent on its face. These, then, are the questions before this Court.

We are not of opinion that the bill before us, brought only to impeach the former decree for fraud, and, therefore, an original bill and not a bill of review, may be treated in the Appellate Court, on its own motion, as a bill of review for an error apparent. See *Haskins* v. *Rose,* 70 Tenn. (2 Lea), 708, and *Wallace* v. *Goodlett,* 104 Tenn., 670, 58 S. W., 343. The learned Court of Appeals indicates doubt on this question in its opinion, saying:

"It is true that this does not appear to have been the theory of the original bill in the present cause, but we think there are sufficient facts charged therein to warrant its being treated as such and relief granted under the prayer for general relief. *Dodd* v. *Benthal,* 51 Tenn. (4 Heisk.), 601.

"Although the joinder in the bill of charges of fraud by which it is sought to impeach the decree with allegations of fact, which in our opinion are sufficient to warrant the bill being treated as one for error apparent, was not in consonance with the practice of courts of equity, yet in the absence of a demurrer raising this question we do not think it would be fatal to granting of the relief which we think was warranted by averments of fact in the bill, under the prayer for general relief. *Wilson* v. *Schaefer,* 107 Tenn., 300, 325, 64 S. W., 208.

"In the case cited the Court pointed out the irregularity of such practice, but nevertheless treated the bill as if it was properly filed for both purposes."

The Court of Appeals then concludes, as above shown, that this relief may be granted in the instant case under the prayer for general relief.

■ Neither *Dodd* v. *Benthal, supra,* nor *Wilson* v. *Schaefer, supra,* appear to us to afford support for this conclusion. In the Dodd Case the prayer was for possession of land, and while the Court denied this specific relief, it decreed removal of a cloud under the prayer for general relief, the bill setting out all the essential facts. But, while the opinion in that case emphasized the power of Courts of equity to grant relief liberally under the general prayer, where the facts are set forth and the equities so demand, it was said that, "The cardinal rule is that the bill must not be so vague that the defendant may be surprised by a case that he could not be prepared to meet;" and the "relief must be agreeable to the case made by the bill, and not different from it;" and, again, "The court will not grant relief which is without the scope of the complainant's bill, and not prayed for specifically."

Can the relief decreed by the Court of Appeals in the instant case be said to be "agreeable to the case made by the bill"? Is it "not different from it"? And is it not "beyond the scope of the complainant's bill"?

The learned Annotator of Shannon's Tennessee Annotations, Vol. I, p: 407, cites *Wilson* v. *Schaefer, supra,* for, "Bill for fraud and bill of review distinguished and *their joinder disallowed."* (Italics ours.)

■ Whatever liberality Courts of Equity may have exercised or approved as proper in granting, under a

general prayer, relief not specifically prayed for, there are certain well recognized limitations which may not be overlooked. Certain of these are noted in the language just above quoted from *Dodd* v. *Benthal, supra.* The relief granted must be clearly within the scope of the bill, and it must not be either antagonistic to, or altogether different from, that specifically prayed for. Certainly, the Court would not be warranted in treating a prayer for general relief as a prayer for relief, "not in consonance with the practice of courts of equity." Mr. Justice McAlister, in *Wilson* v. *Schaefer, supra* (page 325), has well stated, "the difference between a bill of review and a bill to impeach for fraud," quoting with approval from Chancellor Cooper's opinion in the leading case on this subject of *Berdanatti* v. *Sexton,* 2 Tenn. Ch., 699, 704, the following paragraphs:

"The object and effect of a bill for fraud, even if the fraud consists of want of notice, are to vacate the former decree, not to retry the case; whereas the object and effect of a bill of review are to reverse the decree, so far as it is erroneous, and to retry the case upon the original record, or the original record and new proof, as the bill is for error apparent or newly-discovered evidence. . . . The joinder of the two bills (bill of review and bill to impeach the decree for fraud), having such different objects and effects, is not in consonance with the practice of the court, and would lead to grave confusion."

In *Gordon* v. *Ross,* 63 Ala., 363, 365, the Court says: "The same defenses cannot be made—the same matters are not open for consideration—the same relief cannot be granted—the object and effects of a bill of review, and of a bill impeaching a decree for fraud, are essentially

different. . . . If entertained as a bill of review, the former decree, so far as erroneous, would be reversed, and the court would proceed to retry the cause, rendering the decree the evidence would authorize. But, if fraud has infected the decree, it must be vacated entirely—there is no retrial of the cause.''

The expression, ''not in consonance with,'' used by Chancellor COOPER in a foregoing quotation, means not in accord or agreement with, inconsistent with. Webster's Unabridged Dictionary.

Now what is said in the above quotations was primarily directed to a bill filed in a double aspect and where relief in the alternative was specifically sought. It is certainly none the less applicable where the bill proceeds entirely upon the impeachment for fraud theory, and the prayer is so confined, as in the instant case. It has been repeatedly held that a bill of review for errors of law apparent must specifically point out those errors (see cases cited under Note 14, subsection (7), to Section 4848, Shannon's Code Annotated), and this is stressed by Chancellor COOPER in the *Berdanatti Case, supra.* Of course, no attempt is made in the bill before us to do this, as no such claim is made.

In *Wilson* v. *Schaefer,* the bill under discussion was one partaking of the nature of both a bill of review and a bill to impeach for fraud, and language hereinbefore quoted was used in commenting on that situation of the pleadings. It appears from the opinion that the Court did not, however, dispose of the case upon this issue of pleading, but reviewed it on the merits and dismissed the bill. This does not weaken the force of the quoted statements from excellent authority of the rule applicable.

While what has been said necessitates a reversal

of the decree of the Court of Appeals, we may add that we are not of opinion that a case of error apparent on the record is presented. See summary of rules on this point in *Wilson* v. *Schaefer*, 107 Tenn., 300, 64 S. W., 208.

The theory of the Court of Appeals appears to be that the proceedings in the former cause were fatally defective in that they failed to show (1) that the guardian had contemplated making any charge for the support of the ward, but that this claim was an afterthought, and (2) that no court permission or authority had been granted in advance for the making of the expenditures by the guardian, applying the presumption that the support was furnished to the ward gratuitously. *State for Use of Hickey* v. *Freeman,* 146 Tenn., 304, 241 S. W., 98, and *In re Woods,* 158 Tenn., 383, 13 S. W. (2d), 800, 62 A. L. R., 904, are cited for the rule that a guardian should not be allowed expenditures out of the *corpus* of a ward's estate without previous authorization by the Chancery Court.

However, our cases recognize that exceptions may be made at the discretion of the Court upon a proper showing of necessity, or other excuse. See *In re Woods,* 158 Tenn., 383, at page 391, 13 S. W. (2d), 800, at page 803, 62 A. L. R., 904, where GREEN, C. J., says that the approved rule is that, "proper expenditures would be allowed, if a good reason was shown why application was not made to the court in advance." And the Court of Appeals' opinion also apparently overlooks a distinction recognized between allowances to a guardian for board and lodging of his ward and reimbursements for monies expended for clothes, books, etc. In *State for Use of Hickey* v. *Freeman,* 146 Tenn., 304, at page 307, 241 S. W., 98, this distinction is clearly pointed out, and it must

be presumed that pertinent proof was made before the Chancellor. The decree attacked shows on its face that it was made for "clothing, medicine and school books", as well as for board furnished. There is nothing apparent on the face of the decree or pleadings showing what proportion of the allowance made by the Chancellor was for these different objects. So far as the record to which we look shows, he may have disregarded the item of board altogether, or from evidence before him may have found sufficient excuse for the failure of the guardian to make in advance application for the allowances.

But, however this may be, as before stated, we are satisfied that it was beyond the province of the Court of Appeals, on its own motion, to convert this bill into a bill of review for error apparent on the face of the record and grant relief on this theory under the general prayer for relief. For the reasons hereinbefore stated, the decree of the Court of Appeals must be reversed and the decree of the Chancellor dismissing the bill affirmed.